

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA L. TURNER, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:10-cv-2875-JHH |
| FIRST COLONY LIFE INSURANCE CO., | ) | |
| | ) | |
| DEFENDANT. | | |

## MEMORANDUM OF DECISION

The court has before it the November 19, 2010 motion (doc. #9) for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) filed by Defendant First Colony Life Insurance Company ("First Colony").[1]  Pursuant to the court's November 22, 2010 order (doc. # 11), Plaintiff Sandra L. Turner filed a response (doc. #14) in opposition to the motion on December 17, 2010, and First Colony filed a reply (doc.# 15) in support of its motion on December 29, 2010.  After consideration of the record, pleadings and briefs, the motion is due to be granted for the following reasons.

---

[1] Apparently, First Colony Life Insurance Company is now known as Genworth Life and Annuity Insurance Company.  (*See* doc. #9 at 1; *see also* doc. #10, Answer.)

## I.  Factual Background[2]

On or about October 22, 2001, Plaintiff's husband, Charlie D. Turner, signed an Application for Life Insurance provided by TermProvider, Inc., d/b/a TermProvider Insurance Services, an insurance broker ("TermProvider").  (Compl. ¶ 7.)  Turner signed the application in Huntsville, Alabama, where he and his wife then resided, and requested that the policy be delivered to him in Alabama.  (Id.)

The application was forwarded to TermProvider in the Florida, and on or about November 2, 2001, the application was signed by Gary M. Paulzak, a broker for TermProvider.  (Compl. ¶¶ 7-8.)  The application was approved and First Colony Life issued a life insurance policy to Charlie Turner.  (Compl. ¶ 9.) The life insurance policy was issued on November 29, 2001, and became effective on December 8, 2001.[3]  (Compl. ¶ 10.)

The life insurance policy, number 5,881,408, is a level term life base policy insuring the life of Charlie Turner with death benefits of $500,000.00.  (Compl. ¶

---

[2] The court takes the facts directly from the complaint and considers all facts alleged by Plaintiff as true.  See Scheur v. Rhodes, 416 U.S. 232, 236 (1974) (in considering a motion for judgment on the pleadings, the court must accept all the plaintiff's allegations as true.)

[3] The policy was delivered to Charlie Turner in Huntsville, Alabama, on December 8, 2001, whereupon he signed a Policy Delivery Acknowledgment.  (Compl. ¶ 11.)

11[4].)  Plaintiff Sandra L. Turner was designated as the beneficiary of the death benefits at the time the policy was issued, and she has remained the designated beneficiary.  (Id.)  Initially, the premiums were set to be paid by the owner, Charlie D. Turner, at the rate of $1,075.00 per year.  (Compl. ¶ 12.)  It was the practice of First Colony to mail Charlie Turner a notice that the premium should be paid, shortly before the premium became due.  (Id.)

In October 2003, Sandra Turner and her husband  moved from Huntsville, Alabama to Pensacola, Florida.  (Compl. ¶ 13.)  On or about December 22, 2004, First Colony received a request from Charlie Turner to change the billing of the premiums on the policy from yearly to quarterly.  (Compl. ¶ 14.)   Thereafter First Colony began to mail to Charlie Turner a notice that the premium should be paid each quarter, and after receiving the notice, he would pay the premium.  (Id.)

Beginning in 2005, Charlie Turner began exhibiting symptoms of mental problems  which became increasingly worse.  (Compl. ¶ 15.) Soon his behavior became unbearable to Sandra, his wife, and in April 2005, Sandra moved into her daughter's home.  (Id.)  One month later, in May 2005, Charlie Turner disappeared.  (Compl. ¶ 15.)  He left a note in his son's house telling the family goodbye.  (Id.)

---

[4] The court notes that the complaint contains two paragraph 11s.  This citation is to the second paragraph 11.

Law enforcement was notified, and officers from the City of Pensacola Police Department found him in a park and took him to a local hospital. (Id.) Eventually, Mr. Turner was transferred to the Lakeview Care Center, and then to the West Florida Community Care Center. (Id.) However, Mr. Turner left the West Florida Community Care Center on his own accord. (Id.)

After Charlie Turner was placed in the care center, on or about June 2005, Sandra Turner began paying the premiums on the First Colony Life insurance policy owned by her husband. (Compl. ¶ 17.) On or about June 3, 2005, Sandra Turner mailed a money order for payment of the next premium to TermProvider. (Id.) She included a letter with the money order notifying TermProvider that she was relocating to Mt. Olive, Alabama, and requesting that all future premium notices be mailed to the following address: 5557 Tanner Street, Mt. Olive, AL 35117. (Id.) Shortly thereafter, Sandra Turner received a letter from TermProvider dated June 8, 2005, mailed to the Mt. Olive, Alabama, address. (Compl. ¶ 18.) The letter notified Sandra Turner that TermProvider would not accept money orders.[5] (Id.) Upon receipt of the letter from TermProvider, Sandra Turner mailed a check to TermProvider, Inc. for payment of the premium due. (Id.)

---

[5] The complaint contends that "Charlie D. Turner had previously paid the premium via money order on at least one occasion." (Compl. ¶ 18.)

4

On October 22, 2005, Charlie D. Turner was found deceased[6] several yards off a walking trail near the West Florida Community Care Center in Milton, Florida. (Compl. ¶ 19.)  Two days later, on or about October 24, 2005, Sandra Turner called TermProvider and gave notice that her husband had died.  (Compl. ¶ 20.)   Shortly thereafter, Sandra Turner received a letter from Genworth Financial on behalf of First Colony Life Insurance  dated October 24, 2005, stating that the life insurance policy had lapsed on September 8, 2005 for nonpayment of premium.  (Compl. ¶ 21.)

Sandra Turner did not received any notice of premiums due or any correspondence whatsoever from any entity regarding the life insurance policy since receiving the letter from TermProvider dated June 8, 2005.  (Id.)  Sandra Turner implicitly concedes, however, that she did not pay the quarterly premium, due on September 8, 2005.  (Id.)

Five years later, on October 22, 2010, Sandra Turner filed the instant complaint (doc. #1) in this court alleging breach of contract.  There are no tort claims in the complaint.

## II.  Legal Framework

Under Federal Rule of Civil Procedure 12(c), a motion for judgment on the

---

[6] On or about November 1, 2005 a Florida Certificate of Death was filed in the State of Florida Office of Vital Statistics, stating that Charlie Daniel Turner, Jr. died on October 22, 2005. (Compl. ¶ 22.)

pleadings may be brought at the close of the pleadings.  Fed.R.Civ. P. 12(c).  Such

motion should not be granted unless the plaintiff can prove no set of facts in support

of its claim entitling it to relief.  Lemon v. Dugger, 931 F.2d 1465, 1468 (11th Cir.

1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  When considering a

motion for judgment on the pleadings, the court must accept all the plaintiff's

allegations as true.  See Scheur v. Rhodes, 416 U.S. 232, 236 (1974).

Additionally, under the liberal federal rules concept of "notice pleading" a

complaint is sufficient if the facts state a claim under any conceivable legal theory.

See Thompson v. Allstate Insurance Co., 476 F.2d 746, 749 (5th Cir. 1973).  Federal

Rule of Civil Procedure 8(a)(2) requires that a complaint need only be "a short and

plain statement of the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).  "The Federal Rules reject the approach that pleading is a game

of skill in which one misstep by counsel may be decisive to the outcome and accept

the principle that the purpose of pleading is to facilitate a proper decision on the

merits."  Conley v. Gibson, 355 U.S. 41, 48 (1957).   The theory of notice pleading

is satisfied as long as the pleadings "give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests."  Id. at 47.

## III.  Arguments of the Parties

First Colony contends that the contract claim against it is due to be dismissed

6

on the pleadings for two reasons.  First, it is undisputed that the policy lapsed before Charlie Turner's death, in that the Complaint implicitly acknowledges that the premium was not paid within the time frame designated by the policy, including the 30 day grace period. (Doc. # 9 at 5-8.)  Even assuming all the allegations of her Complaint are true that "the Policy was not in existence and offered no coverage at the time of his death." (Id. at 5.)  First Colony, therefore, reasons that this fact is fatal to Plaintiff's claim because she cannot demonstrate a requisite element of her breach of contract claim, the existence of a valid contract.  (Doc. # 15 at 2.)  Second, First Colony contends that Plaintiff's argument that she should have been sent the premiums instead of her husband is to no avail because she does not have any right under Alabama law to demand that premium notices be sent to her without the policyholder's written consent. (Doc. #9 at 8-9.)

Sandra Turner disagrees and argues that "there are material facts in dispute and significant questions of law which Plaintiff alleges must be resolved before it can be determined whether or not Plaintiff can succeed on her claim." (Doc. #14 at 6.) More specifically, Turner "contends that a course of dealing had been established prior to her husband's death between Plaintiff and Defendant's agent, TermProviders, whereby she was, in fact, corresponding with the agent regarding the policy in question and regarding Plaintiff making payments on the premiums." (Id.)  Turner

7

further contends that "[w]hether she had any right under the law or the Policy is of no relevance because the Defendant's agent clearly directed Plaintiff to pay the premiums to Defendant directly, and Plaintiff and Defendant's agent clearly established a course of dealing in which the agent would correspond to Plaintiff through the United States mail at Plaintiff's Alabama address." (Id. at 7.) Turner then cites six Alabama cases in support of her "course of dealings" theory, even when contradictory to the express terms of the policy itself.  (Id. at 8-9.)  Although Turner admits that these cases "typically deal with the policy owner's course of dealing with the insurer rather than a beneficiary, by analogy the cases can and should be considered" by the court because of the unique nature of the facts of this case in that "Plaintiff had to step in for her husband and handle many of his affairs . . . because he was so severely mentally incapacitated that he could not even care for himself." (Id. at 9-10.)

In its reply brief, First Colony contends that Plaintiff's "course of dealing" argument is without merit for the following reasons: (1) Plaintiff had no legal right to demand and First Colony had no legal obligation to provide all premium notes be sent to her, the beneficiary, without the consent of her husband, the policy holder (doc. # 15 at 5-6); (2) the policy cannot be modified or altered through the interactions of non-parties to the policy as a matter of law (id. at 6-7); (3) a "course

8

of dealings" cannot be established through one premium payment and the exchange of a single series of correspondence (id. at 8); (4) the "course of dealings" theory impermissibly contradicts the terms of the policy (id. at 9); (5) even if Plaintiff could demand all premium notices be sent to her, the failure to provide such notice does not relieve her of the duty to timely make the premium payment under Alabama law (id. at 9-11); (6) the "course of dealings" theory impermissibly attempts to create coverage that otherwise does not exist through estoppel (id. at 11); and (7) Plaintiff's assertions concerning her husband's mental condition are legally irrelevant to her breach of contract claim.  (Id. at 12-13.)

## IV.  Analysis

To establish a breach of contract claim under Alabama law, the Plaintiff must establish the following four elements: (1) the existence of a contract; (2) that plaintiff performed under the contract; (3) that the defendant breached the contract; and (4) that the breach caused damage to the plaintiff. See  Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009) (quoting Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala. 2002)); McCutchen Co., Inc. v. Media Gen., Inc., 988 So.2d 998 (Ala. 2008). Here, Defendant contends that Plaintiff's Complaint fails to establish the first element - the existence of a valid contract.  The court agrees.

It is undisputed that neither Charlie Turner, the policy holder, nor Plaintiff, the

beneficiary, timely paid the premium that was due on September 8, 2005.  (See

Compl. ¶ 21' Doc. #14 at 5.)  Similarly, it is undisputed that the premium was not paid

during the grace period.  (See Exh. 1 to Doc. #9 at 16.)  As such, the policy

automatically terminated by its own terms, as of the due date of the last premium.

(See id.)  Therefore, under Alabama law, Plaintiff simply cannot recover on her claim

for breach of contract because no contract existed when Charlie Turner died.[7]  See

Haupt v. Midland Nat'l Life Ins. Co., 567 So.2d 1319, 1321 (Ala. 1990) (affirming

judgment against widow beneficiary because her husband had allowed policy to lapse

before his death through non-payment of premiums);  Grimes v. Liberty Nat'l Life

Ins. Co., 551 So.2d 329, 332-33 (Ala. 1989) (same); Williams v. Prudential Ins. Co.

of Am., 470 So.2d 1300, 1202 (Ala. 1985).  Simply put, the failure to pay premiums

forfeits a policy under Alabama law, and there is nothing that a beneficiary can do to

reinstate that policy.  See id.

       Additionally, it is well established that Plaintiff did not have any right to

demand that premium notices or any other policy-related correspondence be sent to

her without her husband's written and express consent.  Although Plaintiff argues that

she should have been sent the premium notice, (and presumably would have paid the

---

[7] The court notes that there are some exceptions to this general rule, such as an extension of the coverage period, see Mut. Sav. Life Ins. Co. v. Noah, 282 So.2d 271, 277 (Ala.1973), but those exceptions are not applicable here.

fourth quarterly premium), this argument is futile.  As <u>Couch on Insurance</u> explains:

> The insurer must continue to send notices to the address it has on file for the insured unless it is notified that the insured has changed address . . . .  If the insurer sends a notice to an address different from that stated in the contract, such notice is without force, in the absence of proof that it was received by the insured.

5 COUCH ON INSURANCE § 71:34.

Even if Plaintiff did have some right to demand that all premium notices be sent to her, the failure to provide such notice does not relieve her of the duty to timely make the quarterly payment.  Under Alabama law, neither an insured nor a policy beneficiary may premise a claim for policy benefits on a theory that they were unaware that premiums were due on the policy.  <u>See</u> <u>Floyd v. Allstate Ins. Co.</u>, 989 F.Supp. 1435, 1440 (M.D. Ala. 1998.)  Failure to receive a premium notice does not relieve one of the "duty to remit the premium payment."  <u>Id.</u>; <u>see</u> <u>also</u>  <u>Haupt v. Midland National Life Ins. Co.</u>, 567 So.2d 1319, 1321 (Ala. 1990).  It is not "'onerous or unreasonable' to expect someone to take responsibility for ensuring that their premium payments are remitted in a timely manner."  <u>Floyd</u>, 989 F. Supp. at 1440.

Futhermore, Plaintiff's "course of dealings" argument fails to persuade the

11

court that a contract existed for two main of reasons.[8]  First, the case law cited by Plaintiff does not support her legal theory.  As acknowledged by Plaintiff, all the cases deal with the course of dealings between the insured and the insurance company or its agent.  Alabama courts have never applied a course of dealings rationale to dealings between a beneficiary and an agent.  This is especially true since in Alabama a beneficiary to an insurance policy merely has an unvested, expectancy interest in the insurance policy, revocable at any time by the policy owner.  <u>Flowers v. Flowers</u>, 224 So.2d 590, 597 (Ala. 1969).  As such, Plaintiff, as beneficiary, was considered a "stranger" to the contract before the insured's death.  <u>Id.</u>

Second, even if the case law supported her theory, the facts here would not. Plaintiff attempts to establish a "course of dealings" through the payment of the June 2005 premium and her minimal correspondence with TermProvider concerning the premium payment.  The court notes, however, that not a single premium notice was ever sent to Plaintiff's separate address, and the correspondence is based on her unilateral request that her address, separate from the insured's, serve as the address of record for all premium notices and policy-related correspondence.  Such facts are insufficient to establish a "course of dealings."  Instead, much more history is

---

[8] The court also agrees with the other arguments made by Defendant in its reply brief (doc. #15), but chooses to highlight the two most persuasive to the court.

required.  See Smith v. Edwards M. Thompson Agency, 430 So.2d 853 (Ala. 1983) (course of dealings established based on a three-year payment history); Travelers' Ins. Co. v. Brown, 35 So. 463 (Ala. 1903) (course of dealings established based on eight (8) prior premium payments).

## V.  Conclusion

For the foregoing reasons, the court finds that Defendant First Colony Life Insurance Company is entitled to judgment as a matter of law as to the breach of contract claim asserted by Plaintiff. A separate order will be entered.

DONE this the   13th   day of January, 2011.

_James H. Hancock_
SENIOR UNITED STATES DISTRICT JUDGE

13